UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOSHUA M. DEUTSCHMANN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 3:10-0713 |
| ) | Magistrate Judge Bryant |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

This is a personal injury and property damage action brought under the Federal Tort Claims Act, 28 U.S.C. § 2671, <u>et seq.</u>, arising from a traffic accident that occurred on August 25, 2009, in Clarksville, Montgomery County, Tennessee. Upon consent of the parties, this case was referred by the District Judge to the undersigned Magistrate Judge to conduct all further proceedings, including entry of a final judgment (Docket Entry No. 15).

This case was tried without a jury on July 19, 2011. Following the filing of the trial transcript, both parties submitted proposed findings of fact and conclusions of law.

This memorandum shall be deemed the Court's findings of fact and conclusions of law in accordance with Rule 52(a)(1), Federal Rules of Civil Procedure.

### Findings of Fact

This traffic accident occurred at or near 111 Cunningham Lane in Clarksville, Tennessee, on the afternoon of August 25, 2009. Immediately before the accident, plaintiff Joshua M.

Deutschmann was driving in a generally westbound direction on Cunningham Lane, just west of its intersection with Highway 41A, also known as Ft. Campbell Boulevard.

The other vehicle involved in this accident was a Ford van owned by the United States Army. This van was being driven by Sgt. Jae Park who was on active duty with the United States Army, stationed at nearby Ft. Campbell. It is undisputed that Sgt. Park at all relevant times was driving this van on Army business and in the course and scope of his employment by the United States. Also in the Army van was Sgt. 1st Class Larry Jarrett, who was riding in the right front passenger seat.

Shortly before the accident, Sgt. Park and Sgt. Jarrett had stopped at the RadioShack then located on the south side of Cunningham Lane. Having finished their business there, they reentered the van and drove to the private driveway where the RadioShack parking lot exited into Cunningham Lane. At the time of the accident, Sgt. Park was attempting to cross the four traffic lanes of Cunningham Lane from the private drive serving the RadioShack on the south to another private drive located directly across Cunningham Lane to the north. At impact, the front of Mr. Deutschmann's car struck the right side of the Army van just forward of the front-seat passenger's door. This collision occurred in the right-hand westbound lane of Cunningham Lane.

2

The weather on the date of the accident was clear and dry, and neither driver claims to have been hindered by any impairment to his visibility. Also, excessive speed does not appear to have been a factor in this accident. Mr. Deutschmann testified that he was probably driving at about 25 miles per hour immediately before the accident, and Sgt. Jarrett, who saw Mr. Deutschmann's car just before the impact, estimated that Deutschmann was driving at between 30 and 35 miles per hour. According to the testimony of the policeman, Officer Cronk, the posted speed limit for Cunningham Lane at this location is 35 miles per hour, so there is no claim that either vehicle was speeding.

Sgt. Park testified that as he reached the driveway at the edge of the RadioShack parking lot he looked both ways, found traffic to be clear, and then attempted to cross Cunningham Lane to enter the private drive on the north side (Trial Transcript, page 143 at lines 5-6). Sgt. Park further testified that as he got slightly over halfway across Cunningham Lane, Sgt. Jarrett, seated in the front passenger seat, started saying, "go, go, go." According to Sgt. Park, as Sgt. Jarrett said the third "go," Mr. Deutschmann's car struck the van on the right side near the front. Sgt. Park estimated his speed as he crossed Cunningham Lane as "pretty slow," and "around 10 miles an hour or so." Sgt. Park testified that he never saw Mr. Deutschmann's oncoming car

before it struck the side of the Army van (Trial Transcript, page 144 at lines 10-11).

Mr. Deutschmann testified that shortly before this accident he had been driving generally southbound on Highway 41A following a lunch at a McDonald's located a short distance north of Cunningham Lane. As Mr. Deutschmann approached Cunningham Lane, he got into the right-hand lane and then entered a turn lane connecting Highway 41A with Cunningham Lane. Mr. Deutschmann testified that, as he completed this right turn and subsequent merger into the traffic lanes of Cunningham Lane, he looked back over his left shoulder on two different occasions. On the first occasion, Mr. Deutschmann was a little over halfway through the merge lane. He testified as follows:

> I remember I entered the merge lane. A little over halfway or so, I looked left, over at the intersection, to make sure no traffic was coming through to the left.

(Trial Transcript, page 40 at line 24 to page 41 at line 1). Mr. Deutschmann testified that he thereafter looked back at the roadway ahead and noticed the Army van sitting at the entrance of the RadioShack driveway. He testified as follows:

> After I checked the stop light I looked back in front of me and noticed the van was sitting at the private driveway, the RadioShack, the exit.

Mr. Deutschmann further testified that soon thereafter he looked away from the roadway ahead a second time to be sure that he could

4

safely merge into the traffic lane to his left.  He testified as follows:

> I looked back across my shoulder to the left to make sure nobody was coming through the intersection last minute, so that I could get into this left-hand lane.

Mr. Deutschmann testified that when he again returned his gaze to the roadway ahead, he suddenly saw the Army van in the roadway "maybe a car length" ahead "about a second away." (Trial Transcript, page 43 at lines 15 to 20).  Mr. Deutschmann testified that he immediately hit his brakes, but was unable to avoid striking the van.[1]

Mr. Deutschmann testified that immediately before impact he threw his right arm up in front of his face to shield his face from the air bag, which deployed from the impact of the accident.  Mr. Deutschmann testified that the force of the air bag deployment knocked his right arm into his face.

Following the accident, Mr. Deutschmann telephoned his father, who came to the scene of the accident with a trailer.  Mr. Deutschmann helped his father load his car onto the trailer, although he testified at trial that his right arm was "quite numb" immediately after the accident.  Mr. Deutschmann's father dropped him off at the emergency room of the Gateway Hospital where they checked out his neck and back, "did maybe an x-ray or two," and

---

[1] A car traveling at 25 miles per hour covers 36.67 feet in one second.

5

released him to go home. He testified that he also had a neurologist look at his right arm, and that the doctor said that the numbness "was probably just from the shock of the air bag." Mr. Deutschmann testified that his right arm and shoulder continued to be sore for a few days following the accident and that he returned to the neurologist, Dr. George Lu. However, Dr. Lu did not prescribe any medication for Mr. Deutschmann's injury. Mr. Deutschmann testified that he "couldn't come back to work for a couple of days," but when he did return to work he was "mainly doing light work, such as riding mowers." (Mr. Deutschmann was employed at the time with his father's lawn care service."

Mr. Deutschmann testified that he avoided doing any strenuous overhead or lifting type work with his right shoulder for "about a month or two." Then, on September 18, 2009, as Mr. Deutschmann was at home attempting to remove a box from the top of his closet, he felt a sudden stabbing pain that "felt like somebody was stabbing me in the back with a knife." He dropped the box and fell on a small table in his bedroom. Mr. Deutschmann went to the emergency room that evening where he was treated for a bloody nose and underwent certain x-rays.

Mr. Deutschmann saw Dr. George Lu about a week later on September 25, 2009, and Dr. Lu's physical examination confirmed pain with downward traction of Mr. Deutschmann's right shoulder. Dr. Lu attributed this pain to the air bag deployment during the

6

earlier automobile accident.  Dr. Lu referred Mr. Deutschmann for a MRI.

The MRI performed on September 30, 2009, revealed a partial avulsion, or tearing, of the deltoid muscle in Mr. Deutschmann's right shoulder.  Based upon the complaints and medical history provided by Mr. Deutschmann, Dr. Lu concluded that this muscle tear is likely the result of the motor vehicle accident that occurred on August 25, 2009.

Upon referral from Dr. Lu, Mr. Deutschmann saw Dr. Keith Starkweather, an orthopedist.  Dr. Starkweather recommended physical therapy, and Mr. Deutschmann testified that he went to physical therapy "maybe three or four months."  According to Mr. Deutschmann, the physical therapy helped him "a great deal."

By the time of trial, Mr. Deutschmann had returned to work at his father's lawn care business on "full duty."  He testified at trial that although he is able to do everything required of him in his work, occasionally, for example, if he tries to get leverage on a wrench at a certain angle, "it causes quite a bit of pain in [his] arm still."

Dr. Lu testified that the total amount of medical expenses incurred by Mr. Deutschmann for injuries received in this accident amounted to $15,653.93, and that these expenses were both reasonable and necessary (Lu deposition, Exhibit 8 and pages 10-11).

7

According to the plaintiff, the value of his car immediately prior to the accident was $1,400.00 and after the accident, as a result of the damage, it was sold for a salvage value of $108.50. Finally, plaintiff's employer and father, Harold Deutschmann, testified that, as a result of the accident and the subsequent episode involving lifting the box from the top of the closet, Mr. Deutschmann missed a total of 110.5 hours from work which, when multiplied times his $13.00 hourly rate, amounts to a total of $1,436.50 lost wages.

## Conclusions Of Law

The Federal Tort Claims Act adopts the substantive law of the state where the alleged tort occurred as it relates to questions of liability and damages. <u>Myers v. United States</u>, 17 F.3d 890, 899 (6th Cir. 1994).

In Tennessee, a plaintiff asserting a negligence claim is required to prove the following elements by a preponderance of the evidence: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of the duty; (3) an injury or loss; (4) causation in fact; and (5) proximate causation. <u>Rice v. Sabir</u>, 979 S.W.2d 305, 308 (Tenn. 1998).

Tennessee vehicle statutes impose certain duties on drivers within the state. Specifically, Tennessee Code Annotated section 55-8-131 provides as follows:

8

> **Vehicle entering highway from private road or driveway.** – The driver of a vehicle about to enter or cross a highway from a private road or driveway shall yield the right-of-way to all vehicles approaching on the highway.

In addition, Tennessee Code Annotated section 55-8-136(b) imposes a duty on every driver of a motor vehicle to exercise due care to avoid colliding with any other motor vehicle, including the express duties of "maintaining a safe lookout," and "devoting full time and attention to operating the motor vehicle."

The Court concludes from the evidence that Sgt. Park was guilty of failing to yield the right-of-way as he attempted to cross the four lanes of Cunningham Lane from the RadioShack parking lot on the south to another private driveway directly across Cunningham Lane to the north. Mr. Deutschmann, driving generally westbound on Cunningham Lane, clearly had the right-of-way and Sgt. Park had a duty to yield to the plaintiff. In addition, from the available evidence, the Court finds that Sgt. Park failed to comply with the duty to keep a proper lookout ahead while driving the Army van. Specifically, Sgt. Park testified that he never saw plaintiff's car prior to the impact although he concedes that there would have been no obstruction to his vision. This conclusion is further supported by the deposition testimony of Sgt. Jarrett, who testified that Sgt. Park was "looking left" as he started to pull out of the RadioShack parking lot (Jarrett deposition, page 21 at lines 12-13). The Court further finds that Sgt. Park's failure to

9

yield the right-of-way to Mr. Deutschmann's car was a proximate cause of this accident, since had Sgt. Park yielded, the Army van would not have been in Mr. Deutschmann's lane of travel at the time of impact.

Defendant United States has asserted as an affirmative defense the comparative fault of plaintiff Deutschmann. The defendant asserts that plaintiff Deutschmann failed to keep a proper lookout ahead and therefore failed to stop his car in time to avoid colliding with the side of the Army van. This assertion is based primarily upon the deposition testimony of Sgt. Jarrett. When asked what he saw regarding Mr. Deutschmann's car just before the impact, Sgt. Jarrett testified as follows:

> I noticed that the driver was looking down at his cell phone just prior to impact. Whether he was trying to make a phone call or text, doing something with his cell phone.

(Jarrett deposition, page 24 at lines 18-21).

Plaintiff Deutschmann at trial denied that he had used his cell phone between the time he left McDonald's on Highway 41A and the time of the accident (Trial Transcript, page 49 at lines 16-20). This testimony directly contradicts the testimony of Sgt. Jarrett. Arguing that this credibility issue should be resolved in favor of the testimony of Sgt. Jarrett, the United States pointed to the lack of any tire skid marks by plaintiff Deutschmann's car before impact, suggesting that he was distracted and failed to

apply his brakes in time to cause skid marks. Additionally, the United States offered considerable evidence derived from various social networking internet sites in an attempt to impeach Mr. Deutschmann's credibility generally. In response, plaintiff pointed out that his car was equipped with antilock brakes, which are designed to maximize braking effect by preventing tire skids. In addition, plaintiff argued that if Sgt. Jarrett in fact saw Mr. Deutschmann using his cell phone immediately before this collision, that information reasonably should have been provided to Officer Derrick Cronk, the Clarksville police officer who completed the accident report. Officer Cronk testified that if he had been told that plaintiff Deutschmann had been distracted by his cell phone just before this accident, he would have included that information in his accident report. However, the report contains no such information (Trial Transcript, page 22 at line 12 to page 24 at line 9).

Given this conflict between the testimony of plaintiff Deutschmann and Sgt. Jarrett, and considering all evidence in the case, the Court finds that the United States has failed to carry its burden to establish by a preponderance of the evidence that Mr. Deutschmann was using a cell phone in the seconds immediately before this accident.

Nevertheless, the Court finds from Mr. Deutschmann's own testimony that he breached his duty to keep a proper lookout ahead

11

in the seconds immediately before this accident. In the testimony quoted above in this memorandum, Mr. Deutschmann testified that he looked away from the roadway ahead on two separate occasions in the seconds just before this accident. He testified that he did so on the first occasion "to make sure no traffic was coming through [the intersection of Highway 41A and Cunningham Lane] to the left." Mr. Deutschmann testified that when he looked back at the roadway ahead he noticed the Army van "was sitting at the private driveway, the RadioShack, the exit." Mr. Deutschmann further testified that he looked away a second time "to make sure nobody was coming through the intersection last minute, so that I could get into this left-hand lane." When he once again returned his gaze to the roadway ahead, he testified that he suddenly saw the Army van in the roadway "maybe a car length" ahead, "about a second away." Mr. Deutschmann testified that although he immediately applied his brakes, he was unable to stop in time to avoid striking the Army van. From this testimony, the Court finds that Mr. Deutschmann failed to keep a proper lookout ahead of his car and that this failure combined with that of Sgt. Park to cause and contribute to this accident.

Under Tennessee's comparative negligence law, so long as a plaintiff's negligence is less than the negligence of the defendant, the plaintiff may recover, but the amount of plaintiff's damages are to be reduced in proportion to the percentage of the

12

total negligence attributable to the plaintiff. McIntyre v. Balentine, 833 S.W.2d 52, 57 (Tenn. 1992). From the evidence in this case, the Court finds the comparative fault between Sgt. Park and plaintiff Deutschmann to be: Sgt. Park 80% and plaintiff Deutschmann 20%. As the basis for this finding, the Court notes that Sgt. Park's failure to yield resulted in the Army van being where it should not have been at the time of the collision – in plaintiff Deutschmann's lane of travel. In contrast, plaintiff Deutschmann's car was in his rightful lane of travel at the time that the accident occurred.

From the evidence in this record, the Court finds that plaintiff Deutschmann's total damages resulting from this accident are as follows:

```
Reasonable and necessary medical expenses  - $15,653.93
Pain and suffering                         - $20,000.00
Property damage to his car                 - $ 1,291.50
Loss of wages                              - $ 1,462.50
TOTAL DAMAGES                              - $38,407.93
```

After reducing the amount of this total by 20%, the percentage of fault allocated to plaintiff Deutschmann, the Court finds that plaintiff Deutschmann shall have and recover judgment against defendant United States in the amount of **$30,726.35**.

An order of judgment consistent with this memorandum is entered herewith.

It is so **ORDERED**.

    s/ John S. Bryant
    JOHN S. BRYANT
    United States Magistrate Judge